[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Ann O'Callaghan appeals a decision of the defendant commissioner of social services denying her and her husband certain Title XIX Medicaid benefits. The commissioner acted pursuant to General Statutes §§ 17b-260. The plaintiff appeals pursuant to General Statutes § 4-183. The court finds the issues in favor of the plaintiff and determines that the case must be remanded for further proceedings.
The facts essential to the court's decision in this appeal are not in dispute. The plaintiff applied in behalf of her husband for Title XIX Medicaid benefits at the time he entered a nursing home on November 17, 1994. Following a fair hearing conducted by a hearing officer of the department of social services, the department ultimately denied that application, finding that the husband had assets in excess of the legal limit. The basis of this finding was the hearing officer's disallowance of certain assets as a "community spouse protected amount." Before considering the specific circumstances of this case, it will be useful to review the applicable federal and state statutes and regulations.
General Statutes § 17b-260 authorizes the commissioner of social services to administer the Title XIX medical assistance programs. The commissioner implements the federal Medicaid laws through regulations set forth in the department's uniform policy manual (UPM). The regulations relevant to this appeal implement portions of the federal Medicare Catastrophic Coverage Act of 1988 (MCCA), which amended 42 U.S.C. § 1396.
42 U.S.C. § 1396r-5 and UPM § 1507.05 provide for an assessment of the financial needs and resources of a married couple as of the time of institutionalization of a spouse when the state processes a Medicaid application for that spouse. The MCCA and corresponding state regulations provide for the calculation of a minimum monthly needs allowance (MMNA)[1] for the community spouse (that is, the non-institutionalized spouse), which, as of January 1, 1995, may not exceed $1870.50, or an amount established by the department after a fair hearing. CT Page 30742 U.S.C. § 1396r-5 (d)(3); UPM § 5035.30. The act also allows a community spouse to protect spousal resources, which, as of January 1, 1995, consisted of the greater of (a) $14,964; or (b) the lesser of the spousal share computed by the spousal assessment process (approximately one half of the spousal resources) or $74,820; or (c) an amount established by the department after a fair hearing; or (d) the amount transferred to the community spouse pursuant to a court order. 42 U.S.C. § 1396r-5
(f)(2); UPM § 4022.05(B)(2); UPM § 4025.67 (D)(3). This amount is called the "community spouse protected amount" (CSPA). The institutionalized spouse may retain $1600 without causing ineligibility.
In the present case, the total assets of the plaintiff and her husband were $188,032.11, an amount which is not in dispute. The department determined the spousal share to be $74,820, the maximum allowed under the UPM without first conducting a fair hearing. The remainder of the couple's assets, $113,212, was assigned to the plaintiff's husband. The department denied the Medicaid application because the amount of the assets assigned to the husband exceeded the eligibility asset limit of $1600 for one person.
The plaintiff timely requested a fair hearing contesting the department's determination that her husband was ineligible for Medicaid. The plaintiff further sought to show that her monthly expenses exceeded the MMNA and that the plaintiff required all of the couple's spousal assets to meet her needs.
Following the fair hearing, the department's hearing officer determined that the plaintiff's MMNA should be increased to $1809.75 to reflect her health insurance expenses. The hearing officer also found that the plaintiff's gross monthly income was only 418.25 ($394 for Social Security and projected earnings of $24.25), far less than the MMNA that had been determined for her. The hearing officer accordingly increased the CSPA from $74,820 to $103,183.26 by including assets that were being used by the O'Callaghans to generate income as of the time of institutionalization. The hearing officer found that the "balance of the remaining spousal assets, however, cannot be protected as they were not income producing" as of the time of institutionalization. The hearing officer concluded that the department was correct, therefore, in denying the Medicaid application because the balance of the spousal assets still assigned to the husband, $83,248.85, exceeded the $1600 limit. CT Page 308
In this appeal, the plaintiff does not contest the fair hearing officer's determination of her MMNA. The plaintiff challenges the hearing officer's denial of the Medicaid application based on the determination that the assets in question were not income producing and, therefore, were not assigned to the plaintiff as part of her CSPA to provide her with additional income necessary to meet her MMNA.
The assets at issue in this case consist of two Advest accounts, which were the subject of a letter in the record dated March 27, 1995, from Thomas Fazzina, an investment executive, to the plaintiff's counsel. In this letter, Fazzina stated, "[n]one of the investment in either account generates any income, only capital gains."
The hearing officer based her determination that the Advest assets, which produced capital gains rather than interest and dividend income, should not be included in the plaintiff's CSPA on a State Medicaid Agency Regional Bulletin clarifying the hearing officer's authority to raise the Community Spouse Resource Allowance. That bulletin states, in pertinent part:
 . . . if either spouse establishes that the community spouse resource allowance is inadequate to raise the community spouse's income to the minimum monthly maintenance needs allowance, an amount adequate to provide such a minimum monthly maintenance needs allowance shall be substituted. However, you must consider the community spouse's other income in determining how much more income would need to be generated from income producing resources to bring his/her income up to the monthly maintenance needs allowance.
 Inherent in this concept is that resources used to fulfill an increased PRA under this provision must be income-producing. Otherwise, the transfer would not serve to increase the income of the community spouse.
The principal, and dispositive, argument advanced by the plaintiff in support of her appeal is that the hearing officer erroneously determined that assets that produce only capital CT Page 309 gains, without producing interest or dividends, are not "income producing" and, therefore, are not eligible for assignment to the community spouse to augment her income.
The defendant commissioner cites no authority for the exclusion of capital gains from her definition of the term "income" other than the familiar doctrines affording wide latitude and deference to interpretations of regulations and statutes by the administrative agencies responsible for enforcing them. The plaintiff, on the other hand points out that the dictionaries and the Internal Revenue Service plainly and unequivocally regard capital gains as income to the recipient.
"Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United ParcelService, Inc. v. Administrator, Unemployment Compensation Act,209 Conn. 381, 385 (1988).
The court has examined the entire record in this case, considered the parties' briefs and heard oral argument. Although the record does not specifically so indicate, it is reasonable to infer that the capital gains produced by the mutual funds at least and possibly by the stripped interest bonds are gains that are already distributed and realized and currently ascertainable. Such capital gains are considered income to the owner in every other context and by every other governmental agency. They are moneys currently generated by the assets in question and available to the owners of those assets. Based on this review of the record and the legal arguments of the parties, the court concludes that the hearing officer's determination that the assets in question are not "income producing" was erroneous.
In concluding that the hearing officer erroneously CT Page 310 characterized the assets in question as non-income producing, the court is not deciding that those assets must automatically be assigned to the community spouse. Any such assignment of assets must be made by the department after a hearing at which the hearing officer takes into account whatever factors are appropriate under the applicable statutes and regulations. In this appeal, the court is only deciding that the department must consider the assets in question to be income producing to the extent that they produce capital gains that are or may be realized by the owners of the assets.
The plaintiff's appeal is sustained. Pursuant to General Statutes § 4-183 (k), the case is remanded to the department for a new fair hearing and a new decision consistent with this decision of the court.
MALONEY, J.